## W. DURFEE PETTIBONE v. WILLIAM S. SMITH.

*Diverting a Water-course.*

It is not unlawful to change the course of a stream within the limits of one's own land, if the stream is returned to its original channel before leaving the land, and its flow is not materially diminished.

In an action for diminishing the flow of a stream by diverting its course, the defendant claimed that the diminution was due to a succession of dry seasons. One of his witnesses testified to having known the stream for many years, and lived near it before its course was changed, and to having examined it the preceding fall. *Held* that he could ask this witness how the flow at that time compared with what it was when he lived there: also, that he could ask a supervisor of the township what effect such seasons as the last four or five would have on such a stream.

It is error to submit to a jury a question based on a cause of action not counted on: as where action was brought for diverting a stream of water, and the question was whether defendant had not diminished its flow by using it for his own farming purposes.

Error to Macomb. Submitted Oct. 24. Decided Nov. 1.

TRESPASS ON THE CASE. The facts are in the opinion.

*Wm. H. Clark, Jr.,* and *J. B. Eldridge* for plaintiff in error. An upper riparian owner can use the water to the extent of shortening the distance the stream must flow, *Stein v. Burden,* 29 Ala., 132; *Evans v. Merriweather,* 4 Ill., 496; *Wadsworth v. Tillotson,* 15 Conn., 366; *Elliot v. Fitchburg R. R. Co.,* 10 Cush., 91–195; Washb. Easements, 289, 296; *Dumont v. Kellogg,* 29 Mich., 423.

*Crocker & Hutchins* for defendant in error. A riparian proprietor has simply the usufruct of the water, but no ownership in it, and his use of it even for natural and domestic purposes, must be reasonable, *Newhall v. Ireson,* 8 Cush., 595; *Van Hoesen v. Coventry,* 10 Barb., 518; *Ar-*

*nold v. Foot*, 12 Wend., 330; *Colburn v. Richards*, 13 Mass., 420; *Anthony v. Lapham*, 5 Pick., 175; *Ferrea v. Knipe*, 28 Cal., 340; *Stowell v. Lincoln*, 11 Grey, 434; 3 Kent's Com., 439; Angell on Water-courses, §§ 93–135. If he diverts it from its natural channel, he must return it thereto before it leaves his own land, *Dilling v. Murray*, 6 Ind., 324; *Blanchard v. Baker*, 8 Greenl., 266.

COOLEY, C. J.   Smith sued Pettibone in case for the diversion of a stream of water upon which Smith owned land below where the diversion was caused.   The stream was a very small one,—so small that a question was seriously contested on the trial whether the defendant had the right, as against those below him, to detain by a dam sufficient of the water to permit of his washing his sheep therein. The diversion consisted in taking it out of its natural channel for some distance, and then returning it again before it reached the land of Smith; and the real complaint was, not of the diversion itself, but that the artificial channel cut for the purpose was allowed to become obstructed, so that the water soaked away and evaporated instead of flowing on in its accustomed volume.   The original diversion was not caused by Pettibone, but he now owns the land on which is the obstruction that causes it, and keeps this up.   This statement is sufficient to enable the legal questions to be understood.

On the trial there was evidence that less water now flowed to the plaintiff's land than formerly, and at times the stream was entirely dry.   Smith claimed that this was due to the action of Pettibone, while the latter sought to show that it was in part if not wholly due to a succession of dry seasons.   For this among other things he called as a witness one Ingraham, who testified that he had known the stream a great many years, and lived on the adjoining section when the change in the direction of the stream was made.   He examined the stream last fall.   He was then asked how the flow of water at that time was as compared with what it was when he lived there.   This was objected

to as immaterial, and ruled out.    We do not understand how this could be held immaterial without assuming the very fact to be established, namely, that the action of the defendant in continuing the diversion had caused the deficiency below.    One Goyer, another witness, who was supervisor of the township, was also asked what effect such seasons as the last four or five would have on such streams. This was objected to and ruled out, and it is suggested here that if relevant, it merely called for the opinion of one who was not shown to have any knowledge of the stream in question.    We think, however, that this question, as well as that addressed to Ingraham, bore directly upon the issue, and that any man selected by the electors of a township to be its supervisor may fairly be assumed to have sufficient intelligence to speak with some confidence concerning the effect of dry seasons upon streams in his township.

In giving instructions to the jury the judge submitted to them the question whether the defendant had not diminished the flow of the water to those below him by a use of it for his own farming purposes, which was relatively more than he was entitled to.    This was error, because no such grievance was counted on, and the defendant could not be supposed to be prepared to controvert such a case.

The judge also instructed the jury as follows:  If you find that the defendant unlawfully diverted the stream from its accustomed channel, and did not return it to its accustomed channel before it came to the plaintiff's land, the plaintiff if injured is entitled to recover.    This charge was objectionable for two reasons.    *First*, as stating a mere truism without any explanation of the bearing it could have on the case at bar.    Of course, if one unlawfully does an act to the injury of another the latter has his remedy. But what is an unlawful diversion?    We look in vain through the instructions for any explanation; and every juror seems to have been left at liberty to decide for himself what constituted an unlawful diversion.    *Second*, the instruction was misleading because it implied that there was a showing in the case that the stream was not returned to its channel before it reached the plaintiff's land.    All the

evidence was the other way. If what the judge meant was merely this: that if by reason of the course the stream was compelled by defendant's action to take, its waters were lost before they reached the land of the plaintiff, the defendant would be responsible in damages, then he should have given in the same connection the instruction requested by the defendant, that if the change in the course of the stream had not materially diminished the quantity of water that reached the plaintiff's land, then no cause of action arises from the change. In other words he should have told them that a mere change in the course of the stream above the plaintiff's land, like that shown, was not wrongful or unlawful in itself unless it materially diminished the flow of water to the plaintiff. On the instructions given they might perhaps suppose that any change in the course of the stream was unlawful and presumptively injurious.

Our attention is called to the answers of the jury to certain special questions which were put to them, and it is said that it is manifest from these that the errors complained of, if errors they were, could not have prejudiced the defendant. Those we have mentioned, however, are not relieved by any thing in the case, and we think it not important to consider any others.

The judgment must be reversed with costs, and a new trial ordered.

CAMPBELL and GRAVES, JJ., concurred.

MARSTON, J., did not sit in this case.