62  220
63  163
64  286
62  220
69  369
62  220
80  155
80  242
62  220
92  612
62  220
93  199
62  220
98  252
62  220
103  15
62  220
104  615
62  220
113  497
62  220
120  297
62  220
s28NW  873
129  551
62  220
s28NW  873
131  8459
62  220
143  4168

# Mary Laughlin v. The Street Railway Company of Grand Rapids.

*Negligence—Of street railway company—Established by proof that snow falling during the winter was thrown up beside track, and packed down, so as to leave a depression at the track, at a street crossing, of from six to ten inches, with a short slope downward—In suit for injuries sustained by upsetting of cutter at such crossing—Testimony as to condition of road may be confined to the immediate vicinity of the accident—Competent to allow eye-witnesses who are familiar with driving to give their opinion concerning safety of crossing—Declaration in such a case—Alleging dislocation of plaintiff's shoulder and consequent suffering, and other invisible and internal ailments—Should not be held to any technicality of construction—Examination of plaintiff by medical witnesses—Who testify for defendant regarding particular ailments described in declaration—Physicians present at such examination on behalf of plaintiff—May testify to the particulars in which, in their opinion, defendant's witnesses failed to make proper or full examination—No opinion can prevail over facts—Opinions of experts admissible concerning the scientific probability of certain consequences from particular facts—And scientific probability of their concurrence—Neither science nor witnesses infallible—If facts shown to exist to satisfaction of jury, they must act upon them—Contributory negligence—Party, in proper use of highway, who sought to cross railway at said crossing as directly as seemed practicable—The place being one where an impracticable crossing would be an unlawful obstruction of a public way—And it being habitually crossed, although requiring some care in so doing—Whose cutter was overturned to his personal injury—In absence of proof of carelessness on his part, is a question for the jury.*

1. Where, in a suit against a street railway company for personal injuries caused by the upsetting of a cutter while crossing defendant's track, the testimony for the plaintiff, *if believed*, showed that the snow which had fallen during the winter had been thrown up beside the track, and trampled or packed down, so as to leave a depression at the track, at a street crossing, of from six to ten inches or more, with a short slope downward; and that plaintiff's husband, who was driving, finding it necessary to cross the track at this point, turned the horse so as to cross it as nearly as he could at right angles, but the sleigh, on making the descent, tipped over to the left and threw plaintiff out, her husband being thrown upon her, dislocating her left arm,—

*Held*, that defendant's negligence was made out, and came within

*Bowen v. Detroit City Ry. Co.*, 54 Mich. 496, and *Wallace v. Same*, 58 Id. 231.

2. In *such* a case it is not error to confine the testimony of both parties, as to the condition of the road, to the immediate vicinity of the accident.

3. In a suit against a street railway company involving the *safety* of a street crossing, which it was its duty to prevent being made dangerous for travel, it is competent to allow persons familiar with driving to give their opinion, *as eye-witnesses*, concerning the *safety* of such crossing. (Morse, J., dissenting; see page 229 of opinion.)

4. No amount of description can enable a jury to see a place as witnesses saw it, and while they must describe the place as well as they can, it is always competent for those who are familiar with highways, and their use, to give their impressions received at the time concerning the safety or convenience of passage, and other conditions of an analogous nature. They are not strictly scientific questions, and come within familiar principles. *Evans v. People*, 12 Mich. 27; *Beaubien v. Cicotte*, Id. 459; *Detroit & M. R. R. Co. v. Van Steinburg*, 17 Id. 99; *Underwood v. Waldron*, 33 Id. 232; *Elliott v. Van Buren*, Id. 49; *Pettibone v. Smith*, 37 Id. 579; *Huizega v. Cutler & S. L. Co.*, 51 Id. 272.

5. A declaration for personal injuries sustained by reason of defendant's alleged negligence, consisting of the dislocation of plaintiff's shoulder, and alleging consequent suffering and other invisible and internal ailments, should not be held to any technicality of construction. The injury which is visible and open to common observation may be described and tested easily, and should be described reasonably. But the internal and invisible ailments, which are only inferred from scientific deduction, and on which there is always room for some difference of opinion, cannot be held to so close a rule, and there is no reason why they should be.[1]

6. Where medical witnesses testify on behalf of a defendant, in a suit for injuries sustained, as alleged, through its negligence, to an examination of the person of plaintiff with reference to the particular ailments named in the declaration,—

---

[1] The declaration averred that plaintiff was "greatly hurt, cut, bruised, and wounded, and sustained a dislocation of the head of the humerus into the left armpit, and an injury of the brachial plexus of nerves, causing a partial paralysis of sensation and motion of the left arm, and became sick, sore, lame, and disordered; and from thence hitherto has continued to suffer, and does now suffer, great pain, and was, and from thence hitherto has been, and still is, permanently deprived of the use of her said arm, and has been and is greatly enfeebled in health, body, and mind, and was by the said premises permanently injured and damaged in body and limb, and greatly injured in health; and by reason thereof became and is unable to care for her family and superintend her household duties and attend to her ordinary duties in that behalf."

*Held,* that physicians who were present at such examination, on behalf of plaintiff, should be allowed to testify to the particulars in which, in their opinion, the defendant's medical witnesses failed to make proper or full examinations.

7. No opinion can prevail over facts. The opinions of experts are admissible concerning the scientific probability of certain consequences from particular facts, and the scientific probability of their concurrence. But neither science nor witnesses can be held infallible; and when facts are shown to the satisfaction of a jury to exist, they must act upon them.

8. Where a street railway company allowed the snow which had fallen during the season to be thrown up beside the track, and packed down, so as to leave a depression at the track, at a street crossing, of from six to ten inches or more, with a sharp slope downward; and a party who was in the proper use of the highway sought to cross the railway track at such crossing as directly as seemed practicable, and the cutter was overturned and the occupant injured; and it further appearing that the place was one where an impracticable crossing would have been an unlawful obstruction of a public way, and that it was being crossed habitually, although requiring some care in so doing:—

*Held,* that, in the absence of proof that the injured party acted in a careless manner in making the crossing, the question of his contributory negligence was for the jury.[1]

Error to superior court of Grand Rapids.   (Parrish, J.) Argued June 17, 1886.   Decided July 1, 1886.

Case.   Plaintiff brings error.   Reversed.   The facts are stated in the opinion and head-notes.

*Mitchel & McGarry* and *Peter Doran,* for appellant:

Every person having occasion to use the public streets for the purpose of travel or passage is entitled to feel absolutely safe, while exercising ordinary care, against all accidents arising from obstructions in the street; and no one has the right, without special authority, to materially obstruct it or render its ordinary use dangerous.   The rights of the railway are subject, not paramount, to the rights of the people: *Bowen v. Detroit City Ry. Co.,* 54 Mich. 496–500 ; *Wallace v. Detroit City Ry. Co.,* 58 Id. 231 ; *Dixon v. Brooklyn City & N. R. R. Co.,* 100 N. Y. 170.

---

[1] See "Negligence," 59 Mich. 679; 60 Id. 694; 61 Id. 693.

Contributory negligence cannot be conclusively established by a state of facts upon which fair-minded men may well differ. The inferences to be drawn from the evidence must be certain and uncontrovertible, or a jury, and not the court, must decide them : *D. & M. R. R. Co. v. Van Steinburg,* 17 Mich. 123 ; *Lincoln v. Gillilan,* 18 Neb. 114 ; *Leavitt v. C. & N. W. R. R. Co.,* 64 Wis. 228.

*Edward W. Withey,* for defendant :

Plaintiff was responsible for the negligence of her husband in driving ; his negligence was her negligence : *L. S. & M. S. R. R. Co. v. Miller,* 25 Mich. 277 ; *Abernethy v. Van Buren,* 52 Id. 383.

Plaintiff must show herself free from contributory negligence to entitle her to recover ; and if the undisputed testimony shows that her carelessness contributed to the accident, there is nothing to submit to a jury, and the court should direct a verdict in defendant's favor as a matter of law : *Pzolla v. M. C. R. R. Co.,* 54 Mich. 273 ; *Hutchins v. Priestly Express Wagon & Sleigh Co.,* 61 Id. 252.

Even though the defendant obstructed the highway, if the plaintiff saw the danger and might easily have avoided it, but nevertheless drove into it, she cannot recover : *Butterfield v. Forrester,* 11 East, 60 ; *City of Centralia v. Krouse,* 64 Ill. 23 ; *Lovenguth v. City of Bloomington,* 71 Id. 238 ; *Wood v. Village of Andes,* 11 Hun, 543 ; *Horton v. Inhabitants of Ipswich,* 12 Cush. 488 ; *Wilson v. City of Charlestown,* 8 Allen, 137 ; *Durkin v. City of Troy,* 61 Barb. 437 ; *Schaefler v. Sandusky,* 33 Ohio St. 246 ; *City of Erie v. Magill,* 101 Penn. St. 616.

"Where an obstruction is in the street in plain view of the driver of a vehicle, and his attention is in no manner diverted so as to excuse him for not seeing the obstruction, and he drives aginast it or into it, he is clearly guilty of contributing *proximately* to any injury which may result : *Yahn v. City of Ottumwa,* 60 Iowa, 429 ; *Folsom v. Underhill,* 36 Vt. 580 ; *McLaury v. McGregor,* 54 Iowa, 717 ; *Parkhill v. Brighton,* 61 Id. 103 ; *Bloomington v. Read,* 2 Ill. App. 542 ; *Macomb v. Smithers,* 6 Id. 470.

There is a fatal variance between the allegations of the declaration and the proofs. If a plaintiff describe with minuteness the injury, and means adopted in effecting it, and the truth substantially vary from such statement, the variance is fatal : 1 Saunders on Pl. & Ev. 739 ; 1 Chitty on Pl. 407.

For cases illustrating this rule, see *Kroll v. Estate of Ten Eyck*, 48 Mich. 230; *Batterson v. C. & G. T. Ry. Co.*, 49 Id. 184; *F. & P. M. Ry. Co. v. Stark*, 38 Id. 714–19; *M. H. & O. R. R. Co. v. Marcott*, 41 Id. 433; *Macumber v. White River, etc., Co.*, 52 Id. 195; *Williamson v. Haskell*, 50 Id. 364; *Abernethy v. Van Buren*, 52 Id. 386; *Blooming-ton v. Goodrich*, 88 Ill. 558; *Moss v. Johnson*, 22 Id. 633; *Lund. v. Tyngsboro*, 11 Cush. 563; *Shaw v. Boston, etc., R. R. Co.*, 8 Gray, 45.

General words of exemption, when used after a designation of specific exemptions and risks, will be presumed to include only those of a similar character : *Hawkins. v. G. W. R. R. Co.*, 17 Mich. 57.; *In re the Estate of Ticknor*, 13 Id. 44; *McDade v. People*, 29 Id. 50; *Brooks v. Cook*, 44 Id. 617.

" Words of specification draw into the same class those general terms which are superadded to attain the end without further prolixity :" *Macumber v. White River Log, etc., Co.*, 52 Mich. 196.

*James H. Hoyt*, for defendant.

[Brief discusses substantially the same propositions as that of Mr. Withey.—REPORTER.]

CAMPBELL, C. J. Plaintiff sued for personal injuries caused by the upsetting of a cutter while crossing defendant's track, the cause of the accident alleged being the continued existence of a hard and slippery ridge left by defendant by the side of its track, and making the crossing dangerous. The court below directed a verdict for the defendant on account of contributory negligence. Defendant now insists that, whether or not this defense is clearly made out, there is enough in the record to support the ruling, because no negligence appears in defendant, and because the injury suffered by plaintiff, if any, was not the same alleged in the declaration.

Plaintiff alleges a good many errors in the reception and rejection of testimony, in addition to the vital question whether the case should have been taken from the jury. We do not think it worth while to dwell on all of these points, although some of them are undoubtedly well taken.

The record indicates, on both sides, an amount of objecting and debating on interlocutory questions much beyond ordinary practice, and prolonging and confusing the trial, and we can hardly suppose such a state of things will be exhibited again. The issues were not complicated, and the debates on small points take up altogether too large a part of the record of the trial for the proper disposition of the controversy.

The claim of plaintiff is that upon the twenty-ninth of February, 1884, not far from 9 o'clock in the morning, she, with her husband, was going in a sleigh down Fulton street, towards the railway station, and, at the junction of Park and Monroe streets, had to cross the track, which there turned upon Monroe street, with a switch at the curve. The horse was a steady one, going previously at a walk. She claims that the snow which had fallen along through the season had been thrown up beside the track, and trampled or packed down, so as to leave a depression at the track of from six to ten inches or more, with a sharp slope downward.

Finding it necessary to cross the track, her husband turned the horse so as to cross as nearly as he could at right angles, but the sleigh, in making the descent, tipped over to the left, and threw her out, her husband being thrown upon her, and her left arm was dislocated. She claims that in consequence of the injury the shoulder and arm have been affected painfully ever since, and more or less weakened.

Defendant claimed that there was no negligent disposition of the snow; that the accident came from careless driving over the track, and that the alleged injuries were fictitious and the proof variant.

If the testimony of the plaintiff and her husband, and several other witnesses, on the subject, was true, the defendant's negligence was made out, and came within *Bowen v. Detroit City Ry. Co.*, 54 Mich. 496, and *Wallace v. Same*, 58 Id. 231, cited on the argument. The court below did not allow any testimony of the condition of the road away from the immediate vicinity of the accident. As the testimony, if believed, indicated a condition of things of some

duration, and not a fall of snow too near the time of the accident to relieve the defendant from fault for not removing it sooner, we do not see that any harm was done by confining the inquiry, if the same rule had been applied to both parties.    But it was not.

It was the duty of defendant to see that nothing was allowed to make crossing dangerous at that point, where otherwise both Fulton and Park streets would have been rendered perilous to persons on lawful business.    There was sufficient proof of fault, and we do not gather from the record that the court below thought otherwise.    But we think it was error to refuse to allow persons familiar with driving to give their opinion, as eye-witnesses, concerning the safety of the crossing.

No amount of description can enable a jury to see the place as the witnesses saw it; and, while witnesses must describe the place as well as they can, it is always competent for those who are familiar with the highways, and their use, to give their impressions received at the time concerning safety or convenience of passage, and other conditions of an analogous nature.    They are not strictly scientific questions, and come within familiar principles : *Evans v. People,* 12 Mich. 27; *Beaubien v. Cicotte,* Id. 459; *Detroit & M. R. R. Co. v. Van Steinburg,* 17 Id. 99; *Underwood v. Waldron,* 33 Id. 232; *Elliott v. Van Buren,* Id. 49, and note; *Pettibone v. Smith,* 37 Id. 579; *Huizega v. Cutler & S. L. Co.,* 51 Id. 272.

We do not think there is any force in the claim that the testimony of injury and suffering is fatally variant from the declaration.    The injury is sufficiently described as a dislocation of the shoulder, caused by the accident, and also consequent suffering.    That much, at least, is distinctly enough alleged.    The question whether the dislocation threw the head of the bone into the armpit, or under the shoulder-blade or collar-bone, or elsewhere, was in itself of no sort of consequence, and the conflicting testimony of the medical witnesses shows that it could not be determined except by the medical observer before it was set, and he did not re-

member.   The plaintiff herself is the only person who could describe her actual suffering.   Every one else must, to some extent, prove it by her appearance and declarations of present sensation.

There was testimony of her physicians corroborating her story by their own observations of her personal appearance, and testimony from all the physicians that observations made with the aid of personal explanations must always be more satisfactory than those made without them, if they are consistent with appearances.   There was medical testimony, and plaintiff's own testimony, which corresponded sufficiently with the minute statements of the declaration concerning the specific injuries and consequences to authorize the jury to find them established, and the court could not have selected particular medical witnesses as most worthy of credit, had it seen fit to do so, which we do not find it did.

But we do not think a declaration in such a case as this should be held to any technicality of construction.   The injury which is visible and open to common observation may be described and tested easily, and should be described reasonably.   But the internal and invisible ailments, which are only inferred from scientific deduction, and on which there is always room for some difference of opinion, cannot be held to so close a rule, and there is no reason why they should be.   There is no danger that the defendant in such a case as this will be taken by surprise, for any permanent or temporary mischief likely to arise from injuries such as were originally received can be understood and anticipated on one side as well as on both sides, who seem to have had no hesitation concerning their respective theories, although they were not in harmony.

In our opinion, the plaintiff should have been allowed to show, by her medical witnesses, who were present, the particulars in which, in their opinion, the defendant's medical witnesses failed to make proper or full examinations.   This was itself chiefly a medical question, and inferences drawn from imperfect examinations must be of inferior value.   This was the more important because those witnesses had taken the

grave responsibility of assuming that the plaintiff was shamming, and appear to have confined their observations to the particular ailments named in the declaration. If the plaintiff suffered pain and inconvenience, she was entitled to recover for it, whether scientifically described or not; and if the jury believed her statements, and if they were actually true, the fault would have been in the deductions of the witnesses.

No opinion can prevail over actual facts. The opinions of experts are admissible concerning the scientific probability of certain consequences from particular facts, and the scientific probability of their concurrence. But neither science nor witnesses can be held infallible; and when facts are shown to the satisfaction of a jury to exist, they must act upon them. It does not follow, because particular physical ailments are not established, that there is no pain, or that it does not indicate something else, known or unknown.

We do not think there was any such proof of contributory negligence as to authorize the court to take the case from the jury. The parties were in the use of the highway upon a proper errand, and unless the crossing was in such a condition as to make it reckless to attempt to drive over it, there was no wrong in doing so. It was at a place where an impracticable crossing would have been an unlawful obstruction of a public way, and there is abundant evidence to show that it was crossed habitually, although requiring some care in doing it. Plaintiff's husband is shown, by several eye-witnesses, to have crossed it as directly as seemed practicable, and unless he was shown to have done so in a careless way he was not at fault. All of plaintiff's testimony showed at least ordinary care, and the question was therefore one for the jury.

The judgment must be reversed, with costs, and a new trial granted.

SHERWOOD, J., concurred. CHAMPLIN, J., concurred in the result.

MORSE, J. In this case I fully concur in the opinion filed by the Chief Justice, except in relation to the admissibility of

evidence of the opinions of persons familiar with driving, and eye-witnesses of the condition of the track at or about the time of the alleged injury to plaintiff, as to the safety of the crossing.

The reception of such testimony would, in my opinion, open up a field of boundless speculation, which would tend to confuse and obscure rather than to throw light to the jury upon the question of the true condition of the street. It would also afford occasion and opportunity for perjury, limited only by the character and number of the witnesses who might be interrogated upon the subject.

The admission of the evidence of the opinions of witnesses is always attended with danger, and is not tolerated by the law except in cases when such testimony is absolutely necessary in order to ascertain the truth of a fact to be determined. The truth or falsity of the opinion is necessarily concealed in the breast of the witness, and his perjury cannot be detected or punished.

This case in itself demonstrates the unreliability, and the dangerous character, of expert evidence. Here we have physicians who ought to be and are men of intelligence, and of good standing as citizens in the community where they live, radically differing upon the vital point of the case. Several witnesses sworn on the behalf of the plaintiff strenuously maintain, under oath, that the woman is severely and permanently injured, and a half dozen others hold, with equal pertinacity, that she is not hurt at all, but is shamming.

It is difficult to perceive how the jury was enlightened by the learned and dogmatic opinions of these men, couched often in language not easily understood by plain people, and emphatically disagreeing in almost every particular.

Yet this class of evidence is admissible because it is upon a scientific subject, with which these physicians are familiar, and supposed to have a special knowledge and experience not within the reach of the ordinary citizen serving as a juror.

There is no reason for extending the rule as desired here. There is nothing about the track of this railway, the condition of the street, or the disposition of the ice and snow

about and along the track, which is not within the common knowledge and experience of all who travel in the streets and highways of the cities and towns of our State; nor is there anything about either the track, street, or snow that cannot be sufficiently described by an eye-witness so that a jury can get an intelligent idea of their condition.

The cases in this State cited by the Chief Justice, in support of the proposition that this evidence of opinion as to the dangerous character of this crossing is admissible, do not seem applicable, in my mind.

*Evans v. People*, 12 Mich. 27, simply held that a person not a physician could give his opinion that there was no sickness at a certain time within six miles of a certain place.

*Beaubien v. Cicotte*, 12 Mich. 459, holds that ordinary persons may give opinions as to the mental capacity of another.[1]

In *Detroit & M. R. R. Co. v. Van Steinburg* it was decided that any one possessing knowledge of time and distance might give an opinion concerning the speed of a train of cars passing him.

In *Underwood v. Waldron*, 33 Mich. 232, it was declared that in a case of injury to the foundation walls of a building by the disintegration of mortar caused by water, and when the question to be decided was whether such water came from inside or outside of the walls, a witness might give his opinion upon the matter, if, in addition to his personal view of the disintegrated plaster of the wall, he saw other facts indicating that the water came from any particular direction, which facts and indications he must state to the jury. But if he only saw the plaster of the wall disintegrated and destroyed by water, with nothing but this to indicate whence the water came, he could give no opinion of its source.

In the very extensive note to the case of *Elliott v. Van Buren*, 33 Mich. (Ann. Ed.) 49, where a large number of cases are cited, bearing upon many questions where opinions have been admitted by this and other courts, there is not

---

[1] See *Maynard v. Vinton*, 59 Mich. 154.

one where the dangerous or safe character of a highway, street, or any *other thing* has been permitted to be proven by the opinion of a witness.

In *Pettibone v. Smith*, 37 Mich. 579, a witness was allowed to testify as to the comparative flow of water in a stream, with which he was acquainted, in different years, and the supervisor was permitted to state the effect of dry seasons upon such streams in his township.

The case nearest in point is that of *Huizega v. Cutler & S. L. Co.*, 51 Mich. 272. The following questions were there sustained :

" *Q.* State whether, in your opinion, the gearing that turns the slab-rollers, in an uncovered condition would be dangerous.   *Q.* What would be the effect of a person coming in contact, or his clothing coming in contact, with that gearing,—those cogwheels ?"

It appears from the opinion that the objection was that of immateriality.   SHERWOOD, J., in his opinion, says :

" We can see no objections to those questions.   Certainly the dangerous character of the machinery was one of the questions involved in the case, and the opinion of competent witnesses was admissible to show it, as well as what consequences might be expected if a person were to come in contact with it."

It does not appear from this opinion that the competency of this evidence was raised before the court, and, if it was, the opinion does not declare upon what principle it was admitted.

It certainly could not come within the principle contended for in the case at bar.   This machinery, and its character, and its operation, covered or uncovered, was not a matter of common observation or knowledge, open to all who witnessed it, as was the condition and character of this railway track and its approaches.

Indeed, the plaintiff recovered upon the express ground that he was ignorant of the danger, and not warned of it, when he was working in the mill, and in plain sight of it every hour of the day.   It was not, therefore, a matter of

common knowledge, but required experience in the use and knowledge of such machinery.

It seems to me that it must have been admitted in the court below and sustained here upon the theory that it was a matter of expert knowledge and observation.

An examination of the record of the case confirms me in this opinion. One of the witnesses permitted to answer these questions was a head sawyer of seven years' experience with such machinery, and the two others were, one a sawyer, and the other a mill carpenter, working in this identical mill, and having more than ordinary knowledge of the machinery and its use. The brief of the appellee filed in the case in this Court justifies the reception of this testimony on the ground that it was expert evidence.

As expert testimony it was admissible. But I do not think that persons not experts would have been permitted to answer these questions, nor, in the case of this machinery, could an ordinary jury, not familiar with mills or mill machinery, gather, from a mere description of it, the knowledge necessary to determine its character as to being dangerous in the condition it was. This is not, however, the case with snow or ice piled along a railway track, constantly open to the observation of everybody.

If this kind of evidence is declared competent, we shall have, no doubt, as many witnesses upon a side as the court below will permit, swearing, one set that the crossing was dangerous, and the other that it was perfectly safe. How this can help the jury passes my comprehension ; and if any witness commits perjury, as before said, it cannot be detected or punished, nor is there any criterion within this kind of testimony itself to determine the reliability or worth of this or that man's belief about the safety of the crossing.

It opens the door to opportunities for fraud, and to uncertainties in legal investigation, which I, for one, cannot thus encourage.

If upon the next trial of this case a witness for the plaintiff should swear that the ridges of snow were five or ten feet high, or a witness for the defendant should testify that

there was no snow at all along the track, such testimony could easily be disproved by plenty of persons, and the falsity of the witness, in either case, satisfactorily established; but the false or fraudulent opinion of a witness cannot be thus reached. Other circumstances may show his belief a mistaken one, but his deliberate intention to swear falsely cannot be proven.

Therefore such evidence is dangerous, and liable to defeat the end of justice.

It is a general rule that witnesses must give evidence of facts, and not of opinions. The exceptions to this rule do not include, as I can find, such opinions as were offered and rejected in the court below. In Stephen's Digest of the Law of Evidence, which notes the exceptions to the general rule, and cites a large number of cases illustrating the variety of such exceptions, there is no case reported where the dangerous character of such a place as this crossing has been permitted to be established by the opinions of eye-witnesses, nor is any case cited bearing any analogy to such ruling.

In some of the New England states the question has arisen in the courts whether the opinions of eye-witnesses were competent as evidence of the safety of highways and bridges, or as to the dangerous character of certain places or defects in the roads and streets. Such inquiries are analogous to, and should be governed by, the same principles as the inquiry into the character of the crossing in this case. [1]

I have been able to find but one case where the opinion of the witness was allowed to be given in evidence, and in that case it was permitted upon the express finding that the answers were statements of fact, and not opinions.

In an action against a town for injuries received in consequence of a defect in a highway, witnesses were asked the condition of the road, and answered:

"There was a bad place at the side of the road." "The condition of it was bad." "At the mouth of the culvert it was a steep,—right down; a culvert that I thought a dangerous place."

---

[1] See *Smith v. Sherwood Township*, 62 Mich. 160 (head-note 4).

Upon the claim that these answers were improperly admitted because they merely expressed the opinion of the witnesses who were not experts, and were not statements of any fact, the court said:

"But the court do not so understand the testimony. The witnesses are not asked their opinion as to the sufficiency or insufficiency of the road, but the inquiry was as to the actual condition of the road in point of fact, and as to what the witnesses knew, not what was their opinion on the subject. The answers of the witnesses described the actual condition of the road as within their personal knowledge, and are not expressions of opinion." *Lund v. Inhabitants of Tyngsborough*, 9 Cush. 36.

In the case of *Crane v. Town of Northfield*, 33 Vt. 124, the question was as to the sufficiency of a bridge or culvert while covered with dirt. A witness, who was present at the time of the accident, was not allowed to make the statement that if the dirt had not been washed from the bridge the injury would not have happened. It was claimed that as he was present when the accident happened, and examined the bridge, he was entitled to give his opinion. But the court, after citing the general rule, and giving the exceptions and the reasons therefor, say:

"The substance of the witness' opinion that was asked for was whether it (the bridge) was then safe and sufficient. This was the very question that the jury was to try and decide, and it does not appear to us that there could be any difficulty in having the condition of the culvert so described to the jury by the witness that they would be just as capable of exercising their judgments, and forming a correct opinion, as the witness himself."

The following cases hold the same doctrine: *Lester v. Pittsford*, 7 Vt. 158; *Patterson v. Colebrook*, 29 N. H. 94; *Hutchinson v. Inhabitants of Methuen*, 1 Allen, 33.

See, also, *Kelley v. Fond du Lac*, 31 Wis. 179; *Smead v. L. S. & M. S. Ry. Co.*, 58 Mich. 202–3, and authorities there cited by Sherwood, J.

I believe it is better and safer to hold in accordance with the authorities last cited. The rule that the facts must be

shown, and not the opinions of the witnesses, should be adhered to in all cases where the nature of the thing to be described is such that opinions are not absolutely necessary to correctly inform the jury of the fact in issue in relation to such thing or object. This is a case where there can be no great difficulty in that respect. What is a hinderance, rather than an aid, to the jury should be excluded, especially when it is but the conclusions of witnesses upon facts from which no one but the jurors have any right to draw inferences.

The superior court judge was right in excluding these offered opinions, but in other respects, as noted by the Chief Justice, I think he was in error, and therefore join in the reversal of the judgment below.