GEORGE A. BUTTERFIELD AND JOHN H. CRABLE v. FRANK W. GILCHRIST.

[See 53 Mich. 22.]

*Evidence—Opinions of witnesses—Cross-examination—Rebuttal.*

1. Defendant had logs in a *creek*, to be run out into the main stream, which blockaded *it* near its mouth, and, by reason of the failure of the parties with whom defendant had contracted to run his logs to use due diligence, plaintiffs, who had logs *above* those of defendant, were delayed, as they claimed, in running their logs; and while trying to open a channel through defendant's logs, the foreman of defendant's contractors came out with a force of men, and interfered with the operations of plaintiffs, causing them extra work and expense, for which they brought suit against the defendant. On the trial the foreman was sworn in defendant's behalf, and on cross-examination was asked if he did not instruct his men to roll defendant's logs into the channel of the creek, and not to drive them out, and, if plaintiffs' came out with their drive, to make them drive those logs out ahead of their drive; to which witness gave a negative answer, and on

rebuttal two of his men were permitted to testify to his giving such instructions.

*Held,* that, under the issue, it was material to inquire just what the foreman and his men did there, and when he testified to having a sufficient force of men, and was doing all he reasonably could to drive the logs out of the creek, it was competent to ask him *what* he did, and *what* he instructed his men to do, and to impeach such testimony if untrue.

2. Where the condition of two streams as to volume of water and amount of logs therein, and whether any force of men could have run out the logs from the one into the other so as not to unnecessarily delay the passage of logs further up the tributary stream, was in issue, no description of the streams, or the amount of water or logs in them, could adequately inform the jury on the subject of inquiry; and it was competent for a witness who had testified to *personal* knowledge on the subject to give his *opinion* as to what an *adequate* force of men could have done in running out said logs. *Laughlin v. Grand Rapids Street Railway Co.*, 62 Mich. 226.

3. Where witnesses are shown to be accustomed to run logs on streams, and to have *personal* knowledge of the business and streams not possessed by *ordinary* persons not familiar with such streams, or the manner of running logs therein,—

*Held,* that, after stating the *facts* upon which they based their opinions, the jury were entitled to the same, it being impossible to clearly present the precise condition of the streams, and logs therein, by a *bare* recital of *such* facts.

Error to Alpena. (Emerick, J.)    Argued July 14, 1886. Decided October 14, 1886.

Assumpsit, under How. Stat. § 2035.[1]    Defendant brings error.    Affirmed.    The facts are stated in the opinion, and former report of the case, found in 53 Mich. 22.

*Turnbull & Dafoe,* for appellant.

*R. J. Kelley,* for plaintiffs.

MORSE, J.    This cause has been in this Court before, and is reported in 53 Mich. 22.    The judgment for plaintiffs was

[1] See *Shaw v. Bradley,* 59 Mich. 199.    Amended by Act No. 66, Laws of 1887.

then reversed, and a new trial granted, for errors in the admission and rejection of evidence.

Another trial has resulted in a judgment for plaintiffs, and the defendant again brings error.

A full statement of the cause of action is given in the opinion of Justice SHERWOOD in 53 Mich., and we do not deem it necessary to restate it.

The defendant submitted special questions to the jury upon the main points of his defense, who found against him, as follows:

1. That the West Branch, or main creek, below and at the mouth of Butterfield creek, was not reasonably full of logs up to May 14, 1881.

2. That the parties who were driving the main creek, or West Branch, did not have a sufficient quantity of logs which they were driving to keep, and did not keep, the West Branch, at and below the mouth of Butterfield creek, reasonably full of logs, up to May 25, 1881.

3. The plaintiffs could have run their logs into the West Branch, or main creek, at any time from May 13 to May 25, 1881, without supplanting or unreasonably disturbing the drive of those who were driving the said main stream.

4. Bewick, Comstock & Co. did not use a reasonable and adequate force, for the purpose of driving the logs in the main creek, from the time they commenced up to May 25, 1881.

The plaintiffs' logs were above defendant's logs, on Butterfield creek. Defendant's logs were banked in and blockaded this creek near its mouth. Bewick, Comstock & Co. had the contract of running defendant's logs, and were also running their own and others, in the main stream.

Plaintiffs claimed Bewick, Comstock & Co. did not commence in time, and they had to pick a channel through the Gilchrist logs, and that, while they were doing so, Blair, the foreman of Bewick, Comstock & Co., came up there with a force of men, and commenced rolling the Gilchrist logs into the stream again, blockading it and hindering them in

the floatage of their logs; that by reason of the delay and the hinderance aforesaid they had to expend a number of days' work in clearing the channel, and running the Gilchrist logs out of Butterfield creek, in order to get their own out.

Defendant's main defense was that from the thirteenth of May to the twenty-fifth of May, 1881, the main stream, at and below the mouth of Butterfield creek, was reasonably full of logs all the time, running down the stream, by parties who had the possession of the stream, and the right of possession, so that the Butterfield logs could not have been run into said main stream without supplanting and disturbing the logs of those who had a right to the drive by first gaining possession of the stream; and that Bewick, Comstock & Co. did use an adequate force, and did all that was reasonable, to drive the logs and keep them out of the way of plaintiffs. This defense was negatived by the jury in their special verdict, and they found generally for the plaintiffs.

We have carefully examined the charge of the court, and find that the circuit judge fairly instructed the jury in accordance with defendant's theory. He told them that if Bewick, Comstock & Co., before the time plaintiffs' men went there to pick a channel through,—

"Had been, in the exercise of reasonable prudence and a reasonable degree of diligence, engaged in driving the logs of defendant, Gilchrist, and others, down the waters of the main stream, up to that time, and by that reasonable use of the waters of the main stream in driving the logs of the defendant, Gilchrist, or of any other person or persons owning logs, had acquired the whole capacity of the stream, to a reasonable extent, for the purpose of driving logs,—in other words, had filled up the waters in that stream to a reasonable extent, so that it would have been unreasonable and impracticable for Mr. Gilchrist or Mr. Comstock to have been required to move the Gilchrist logs out into the main stream at that time,—he would not have been liable in an action for neglecting, up to that time, to move these logs in question, because, gentlemen, the people who put logs in the main

stream had a perfect right to drive them just as soon as they could; and as long as they were using the waters of that stream, and making a reasonable use of the waters of that stream, in driving logs, even if they filled up the entire channel of the stream with the logs which they were driving, they had a perfect right to do so; and if that would have prevented Mr. Gilchrist or his employes, or those to whom he had contracted to drive the logs, from bringing those logs out of the Butterfield creek in a reasonable manner, if it was then unreasonable to demand that they should do that, Mr. Gilchrist or Mr. Comstock were not bound to begin the driving of the Gilchrist logs up to that time."

And also as follows:

"I say this to you, gentlemen: that if, up to the time when this work began,—the thirteenth or fourteenth of May, —the main stream was so full of logs, which were then being run and driven by Comstock in a reasonable and proper manner, as to completely exhaust the capacity of that main stream, into which Butterfield creek emptied, or to such an extent as to have rendered it impracticable and unreasonable to demand that the Gilchrist logs should have been moved out at that time, by reason of the difficulty of forcing them into the main stream, then the plaintiffs would not have a right to have called upon the defendant, Gilchrist, to have moved his logs at that time, and they could not recover in this case.

"That the persons driving logs in the main stream had a perfect right to use that stream in a reasonable manner, to the full capacity of it, for driving logs; and if they had secured the control or possession of the surface of the stream to its natural capacity, for the purpose of driving logs in a reasonable and proper manner, that they would not have been compelled to desist from that operation for the purpose of letting in these Gilchrist logs.   On the other hand, gentlemen, if you should not believe that state of facts, from the evidence in the case; if you should not believe that the quantity of logs which were being run and driven, in a reasonable manner, in the waters of the main stream, would interfere with the driving of the Gilchrist logs,—then it would not be a defense in this action."

He also instructed the jury, in accordance with the former opinion of this Court, that plaintiffs could not recover for running the Gilchrist logs or clearing channel in the main

stream, nor for work in rolling logs from a distance back from the creek, and could only recover for rolling in and removing the logs originally banked, and placed there afterwards by Blair and his men, that formed an obstruction to the stream; and also that, if they found at the time Blair went there he had a sufficient force under his control to have moved these logs out in a reasonable time after that, and that he was there for the purpose of doing so, but that he did not do it by reason of the interference of plaintiffs' men, as claimed by defendant, the plaintiffs could not recover in the action.

The whole charge was fair, and as favorable to defendant as the law would warrant.

It remains, therefore, to examine the proceedings before the submission of the case to the jury, to see if any error was committed in the taking or rejecting of testimony.

When the plaintiffs were making their primary proof of the condition of the logs in Butterfield creek, and the work done to get them out into the main stream, the defendant's counsel interposed numerous objections to the reception of testimony, based on the ground that there had been no showing of the condition of the main stream, or that Bewick, Comstock & Co. had not put on an adequate force for running the logs in the main stream. These objections only went to the order of proof, and were in the discretion of the court. It seems, from the special finding of the jury, that ample evidence was introduced afterwards to meet the objections, as they found the main stream was not full, and that defendant's contractors did not use sufficient force upon the stream.

Evidence was introduced by the plaintiffs, from men working under Blair, that they shoved logs back, and kept the mouth of Butterfield creek dammed up by logs, so that logs could not come out of that creek into the main drive. The court would not allow, on the primary case, the plaint-

iffs to show what instructions Blair gave his men, but simply what they did.

But when Blair was sworn as a witness in defendant's behalf, he was asked, on cross-examination, if he did not tell Mr. McDole and the other men under him to roll logs in and keep the channel of the creek full, and not to drive the Gilchrist logs out, and, if plaintiffs came out with their drive, to make them drive those logs out ahead of their drive. He answered "No." On rebuttal, two of the men working under him were permitted to testify that he did so instruct them.

Error is assigned upon the admission of the evidence in chief, to the cross-examination, and the testimony given in rebuttal upon this point. We think it was all properly admitted.

It was made, by the issue between the parties, material to inquire just what Blair and his men did there, and when Blair was introduced by the defendant to establish that he had a sufficient force of men, and, as foreman for Bewick, Comstock & Co., who were driving the logs for defendant, was doing all he reasonably could to get the logs out of the creek, it was certainly competent to ask him what he did, and what he instructed his men to do, and to impeach his testimony, if untrue, as to what he said as well as to what he did. If he told his men to obstruct the creek, and they did so, it seems to me it was competent to show it as affecting not only his credit and interest as a witness, but, as a matter of fact, tending to show that reasonable diligence was not used in getting out the Gilchrist logs. He was the man acting for Bewick, Comstock & Co., who were driving defendant's logs. If defendant was responsible for their delay and negligence, he must also be responsible for the delay and negligence or blocking of the stream by their foreman and men. The plaintiffs had a right to have the

63 Mich.—11.

Gilchrist logs removed, if they reasonably could be, by defendant's agents; and it appears very clear to me that if they unreasonably failed to get out these logs, and plaintiffs had to drive them out, they would be entitled to recover the expense of so doing, whether such services were caused by wrong or neglect. If these men, while in the course of their employment, willfully kept the logs back, the remedy against defendant would be the same as if the logs were kept back in the creek by the default or neglect of Bewick, Comstock & Co., who were driving the logs for defendant, or the men in their employ.

When the case was here before, we decided that what Blair said to Aiken, a man in the employ of plaintiffs,—"If you want to get those logs out of the road, you must put on men and get them out,"—could not bind the defendant. It was a mere declaration, not admissible under any rule of law, as Blair's attention was not called to the remark, and it was not offered as impeachment, but as original evidence to sustain plaintiffs' suit.

In the present trial the evidence was confined to Blair's instructions to the men under him while they were at work running the logs, and was brought out in contradiction and impeachment of his testimony, and seems to me to have been legitimate and proper.

David Bruno, a witness for plaintiffs, was asked the following question:

"With a sufficient or adequate force of men upon the West Branch to have kept the logs moving that were running in the West Branch at the time, could the Gilchrist logs have been run out of the North Fork [Butterfield creek] by an adequate and reasonable force of men?"

This was objected to by defendant's counsel as not competent, because there was no showing that the witness was on the West Branch, and knew the facts and circumstances or situation of logs on the West Branch, or how such logs were running.

The witness was permitted to answer, which he did as follows:

"There was not a sufficient force of men on the West Branch, if I understand the question right. Had there been, the logs in the Butterfield creek could have been drove out."

The first part of the answer was hardly responsive to the question, but no motion was made to strike it out.

We do not think that the objection was well taken, as it appears from the record that Bruno had before testified as to the condition of the West Branch, from the mouth of Butterfield creek to Stafford's landing, from personal observation; that the stream was free from ice, and that, although the creek was full of logs at the mouth of the North Fork, there was space and open water below; and that Blair had five or six men driving logs below the mouth of Butterfield creek, and shoving logs out of it into the West Branch. After stating this, there could be no harm in his giving his opinion of what an adequate force could have done. No description of the two streams, or the amount of the water or logs in them, could give the jury any adequate information on the subject of inquiry, to wit, whether any force could have got the Gilchrist logs out in time. The question came clearly within the exceptions to the rule that opinions cannot be received in evidence. See *Laughlin v. Grand Rapids Street Ry. Co.*, 62 Mich. 226, and cases there cited.

Another witness for plaintiffs, James Aiken, testified that when he went up there on the third or fourth of May the water was in good shape for driving, the ice was all out, and everything suitable for moving the logs forward. He found Butterfield creek piled full of logs for a space of over half a mile above its mouth, and that no one was working on the logs. The West Branch, as far as he could see from the mouth of the creek, was clear of logs. He did not, however, go up or down the West Branch.

He was asked:

" State to the jury at that time, the thirteenth of May, when you were there at the high bank [at the mouth of Butterfield creek] with a crew of men, what, if anything, was there to have prevented, with a reasonable force of men, moving the Gilchrist logs out into the West Branch."

This was also objected to for the reason that the witness had not been on the West Branch. Upon interrogation by the court, he stated that the creek (main stream) was clear, as far as he could see, both ways from the high bank. He was then permitted to answer, and said "there was nothing."

We think the question and answer were proper. The objection only went to his knowledge of the condition of the West Branch, and not to his giving an opinion or conclusion. He was shown to have some knowledge, and the value of his testimony was governed by the extent of such knowledge, which was for the jury to determine.

He was also shown to have driven logs on the West Branch before and after the time of which he was testifying, and to be familiar with the general character of that stream.

The following question was also put to him:

"Taking into consideration the character of the West Branch at the time of the season when you went up there with your crew, state whether or not, in ordinary prudence and good judgment, there should have been a force of men upon the Gilchrist logs for the purpose of putting them out of that stream."

Objected to as—

"Merely calling for the conclusion or judgment of the witness, without detailing the facts, and the witness already shows he had no knowledge of the condition of the West Branch at all."

He answered:

"Yes; there ought to have been some men on there putting them out."

As before said, we think he had sufficiently detailed the

facts within his knowledge, which knowledge was to be measured by the jury.

Both of these witnesses were shown to be men accustomed to run logs on these streams, and having a knowledge of the business and the streams not possessed by an ordinary person not familiar with the creeks, or the manner or the methods of running logs on the same. They were competent, after stating the facts upon which they based their opinions or conclusions, to give them.

Each witness gave the facts establishing the basis of his observations, and upon which he gave his opinion, and, from the nature of the inquiry, we think the jury were entitled to such opinions, as the precise condition of the stream and the logs in it could not possibly be presented clearly to them by a bare recital of the facts within the observation of the witnesses. See note to *Elliott v. Van Buren*, 33 Mich. 49.

I find no error in the proceedings.

The judgment is affirmed, with costs.

The other Justices concurred.