JOHNSON v. JORDAN.

1. WITNESSES—QUO WARRANTO—ELECTIONS.

In quo warranto proceedings to try title to the office of
sheriff of Iosco county, the court erred in allowing the
attorney for the relator to interrogate his main witnesses,
for which of the respective parties they cast their votes
at the election.

2. EVIDENCE—OPINIONS—WITNESSES.

Testimony by one of the witnesses of the relator, who
claimed that the ballot box had been opened and contents
tampered with before the recount, that the witness had
stood in a place outside the railing and it was possible to
see from that position how the ballots were marked, was
open to rebuttal by evidence of one of respondent's wit-
nesses that during a previous election he had stood in such
place and was unable to observe the marks on the ballots.

Error to Iosco; Connine, J. Submitted January 27,
1914. (Docket No. 162.) Decided December 18, 1914.

Quo warranto by Collie Johnson against John
Jordan to test the title of respondent to the office of
sheriff of Iosco county. Judgment for relator. Re-
spondent brings error. Reversed.

*John E. Kinnane* (*Arthur Sauve,* of counsel), for
appellant.

*Charles A. Jahraus* (*Hall, De Foe & Hall,* of coun-
sel), for appellee.

McALVAY, C. J. This is a quo warranto proceeding
to try the title to the office of sheriff of Iosco county.
The case was first tried in said county, and resulted
in a disagreement of the jury. Later a change of
venue was granted to the county of Alcona, where a
trial was had which resulted in a verdict in favor of

relator. Respondent made a motion for a new trial, which was denied by the court, and a judgment of ouster in favor of relator and against respondent was duly entered June 4, 1913, following which relator entered into possession of the office of sheriff, assumed its duties, and still exercises the same. The material facts, briefly stated, out of which this controversy arose, are as follows:

These parties, relator and respondent, were candidates for the office of sheriff at the general election held November 5, 1912, in Iosco county. The result of this election upon the returns made and filed by the inspectors of election showed that relator was elected sheriff by a majority of two votes. November 12, 1912, respondent filed his petition for a recount by the board of county canvassers of certain precincts. Later, on November 13, and November 16, 1912, relator also filed two petitions for a recount of certain precincts. The board of county canvassers proceeded to, and did, recount nine voting precincts, as demanded by the petitions of these parties. The result of this recount changed the result as shown by the returns filed by the inspectors of the election, in showing the election of respondent, John Jordan, to said office of sheriff by a majority of nine votes. A certificate of election was duly issued and given to him. He entered upon the duties of the office at the beginning of the term thereof, January 1, 1913, and so continued to hold such office as sheriff of said county and discharge its duties until he was ousted therefrom by the judgment of the circuit court, as above stated.

In the quo warranto proceedings respondent's plea to the information and the replication of relator to such plea raised several issues, upon all of which the first trial was had. The second trial began May 22, 1913. Shortly before that date, on May 6, 1913, the parties to this cause, by their respective attorneys,

entered into a certain written stipulation relative to the issue to be tried therein, as follows (omitting the formal parts):

"It is hereby stipulated by and between the parties in the above-entitled cause, by their respective attorneys, that all issues raised by the pleadings, in said cause, except the issue relating to Sherman township, Iosco county, be and the same are hereby waived; and it is agreed that the issue raised by the pleadings in this cause as to Sherman township be the only issue to be tried, and that the decision of said issue in Sherman township shall determine the contest between the parties hereto for the office of sheriff, said issue to be submitted to the jury in the same form as the questions submitted to the jury on the former trial."

This stipulation narrows and restricts the issue to be considered, and excludes from consideration everything except the one question to be submitted to the jury. The matter alleged in the information bearing upon this single issue is all contained within the third paragraph, which, after setting forth the whole number of ballots cast in the township of Sherman at said election for the office of sheriff and the number of ballots cast for each of these parties, as found by the board of election inspectors for said township, gives a like statement relative to the result of the recount of such township for that office, and, claiming that the canvass by the election inspectors for the township was correct, charges that between the time of the original canvass and the recount "said ballot box was wrongfully and illegally opened and tampered with, and certain of said ballots altered, and certain others withdrawn from said box, so as to fraudulently produce the result shown by said recount," and also—

"That the seal upon said ballot box gave evidence of having been tampered with, and four of the ballots so cast in favor of plaintiff and one in favor of respondent had been marked in different places thereon

with squares, crosses, and otherwise, so as to clearly present distinguishing marks, but that none of said markings were upon said ballots at the time of said original canvass and all of which were counted by said board of county canvassers upon the supposition, as plaintiff is informed and believes, that said ballots did not contain such markings when voted and originally counted."

The record shows a large amount of testimony was introduced upon the trial by both parties. It will be of no benefit to abstract this testimony, and reference to it will be made only as may become necessary.

The case is brought here for review upon writ of error by respondent, upon errors assigned to the rulings of the court in the admission and exclusion of evidence, upon certain portions of the charge of the court as given, upon refusal to give certain requests of respondent, and upon denying a motion made by respondent for a new trial. Such of the assignments of error relied upon by appellant will be considered as may be necessary.

During the trial of the case each of four of the leading witnesses for relator was asked to testify for which of the two parties to this suit he voted at the election in question. Counsel for respondent objected to such testimony as incompetent, immaterial, and irrelevant. The objection was overruled, an exception taken, and each witness testified that he had voted for respondent. In each instance, after the witness had so testified, counsel for respondent moved that the answer be stricken out, for the reasons first given, which motions were denied, and exceptions taken. The first time the question arose and an objection was made to this class of testimony, the court stated to the witness:

"You are not obliged to say whom you voted for for sheriff. If you choose to do so, you may."

The repetition of like questions to other witnesses by plaintiff's counsel would indicate that this line of examination was intentional, and it is asserted on the part of relator that the testimony was offered to show the relation of the witnesses to the parties and to the litigation. The witnesses were not related to the parties in the sense in which that term is used, nor were they related to the litigation, other than material witnesses in any case. Examination was permitted relative to matters concerning which, as a general proposition, no witness should be interrogated. These questions were in no way relevant or material to the proof of any fact presented or involved in the issue being tried. We cannot but conclude that this testimony was prejudicial, and that the court erred in allowing such questions to be answered, and in not striking the answers from the record after they had been given.

The contention of relator, as charged in the information in this case, as appears from the quotation therefrom in this opinion, was that the first count of the ballots was correct, and that the ballot box had been illegally opened after that count and before the recount, and ballots altered and withdrawn for fraudulent purposes. In support of this contention testimony of witnesses who were present watching the count on election night was introduced, showing in what position and manner the count was observed by them. The election board, and others to the number of seven, were seated at a table upon a platform in the town hall, which was separated from the main floor by a railing. It appears that the hall was full of men, making considerable noise, and that it was poorly lighted by an oil lamp. One witness testified at length with particularity as to this count observed by him, standing part of the time on the floor and part of the time upon a chair outside this railing sev-

eral feet from the table, and that he could, in such position, see how these ballots were marked.

To rebut this testimony respondent offered the testimony of a tally clerk, who testified that at former elections at the same place he had undertaken to see the ballots counted by the board on that table when he was outside the railing. He was asked:

"*Q.* Whether or not you could, standing on the floor outside of the railing, whether it is possible to see how the ballots are marked that are lying on the table? (Objection.)

"*A.* It is impossible to see it."

Upon the objection of counsel for relator that this called for a conclusion, it was stricken out, and an exception taken. Thereupon counsel for respondent further examined the witness to qualify him to testify whether, under like conditions as at this election, standing on the floor or on a chair outside of the railing, he had observed whether the markings on ballots during the count could be seen. Upon the same objection the testimony was excluded. The same testimony was offered by another witness and excluded upon the same ground. This question was also raised upon the motion for a new trial, and denied on the ground that it was opinion evidence. The court must have overlooked the fact that the two witnesses whose testimony was offered for this purpose had testified that they were present at the election in question, knew the situation of the table at which the board of canvassers sat, the railing outside the platform, and had been present at the same place at other times when elections were held, and had attempted to view the ballots being counted and to see the marks upon them from without the railing, standing upon the floor and on a chair. They had qualified themselves to testify. They were familiar with the surroundings. The testimony offered

was competent, and was erroneously excluded. Such questions call for facts, and not for mere opinions, and the answers thereto should have been received. *Laughlin* v. *Railway Co.*, 62 Mich. 220-226 (28 N. W. 873), and cases cited; *Rietveld* v. *Railroad Co.*, 129 Iowa, 249 (105 N. W. 515).

The supreme court of Iowa in a more recent case said:

"It is one of the commonest occurrences, upon the trial of cases where witnesses have testified to observations made or objects seen from a given point, for the opposing party to call witnesses who claimed to have made the test from the same point and have them testify that the things alleged to have been seen therefrom are not, in fact, visible." *Gray* v. *Railroad Co.*, 143 Iowa, 268 (121 N. W. 1097), and cases cited.

The court was in error in excluding this testimony.

The sole contention presented upon the trial of this case on the part of relator was that between the time of the count by the township board of canvassers of the ballots cast at this election in Sherman township, on November 5, 1912, and the recount, which began November 15th following, by the county canvassers, the ballot box had been unlawfully opened, and some of the ballots marked with distinguishing marks, and the result of the election thereby changed. Upon this contention the relator based his attack upon respondent's right to this office. Respondent relied solely upon the recount for his title to the office, and his attitude was entirely one of defense. He was charged with having obtained his office as a result of this fraud. His defense was and is that no such fraud has been established.

Both of the parties to this suit invoked the provisions of our statute providing for a recount of the ballots. Under section 3672, 1 Comp. Laws, it is provided, as follows:

"The returns made by the said board of canvassers upon recount shall be deemed to be correct, anything in the previous return from such township, ward or district, to the contrary notwithstanding."

These quo warranto proceedings are brought under section 3673, 1 Comp. Laws, which provides that:

"For * * * tampering with the ballot boxes before a recount by the board of canvassers, the remedy by quo warranto shall remain in full force together with any other remedies now existing."

The record shows that after the recount by the board of county canvassers when the ballot box containing the ballots was relocked and resealed by such board up to the time of the first trial of this case, this ballot box and its key were in the sole custody of the township clerk of Sherman township at his house. At that trial it was produced by him and opened, and the ballots were introduced in evidence by the relator.

The record also shows that after the township canvass the ballots were put back into this box by the board of canvassers, the box was duly locked and sealed, the key was delivered to this township clerk, and the seal to the proper officer. The box was then delivered by the board to the custodian of the town hall, and placed by him and the board in the property room in said building, in which it was securely locked with a spring lock by such custodian, who also securely locked the outer door of said hall, which was also provided with a spring lock. The custodian alone had keys to the property room and of the town hall. He went with the township clerk, unlocked the building and the property room, and delivered this ballot box to him to take to the county canvassing board for the recount. From which time, as already stated, this ballot box was in the custody of said township clerk until the time of the first trial of this case, except the short time it was in the possession of the county can-

vassing board. The relevancy of the facts above stated will appear when taken in connection with the discussion of some of the errors assigned now to be considered.

Respondent has assigned errors upon certain portions of the charge of the court wherein the jury is instructed relative to the count and recount, and relative to the ballots, and what the jury could consider in determining the question as to whether they had been tampered with, claiming that in such portions of his charge the court erroneously instructed the, jury. We will consider these errors so assigned in their order, as follows:

"So a recount was had in this case of the ballots of the township of Sherman, and I will say to you at this point that that recount is not binding on us here in this court. We are engaged here in an original investigation of the number of votes that were cast relatively for these two men in the township of Sherman, and the result of the recount made by the board of canvassers is not binding upon us at all. We go back to the ballots themselves, and make our own investigation, and make our own deductions, and make up our own verdict."

It appears that the court in this charge gave the jury to understand distinctly that the recount by the board of county canvassers was not to be considered of any force or effect. This is more apparent when the following sentence, given later in the charge, is considered:

"Were the ballots tampered with so as to change the result? * * * If you say, 'No,' then we will take the ballots and use them in determining how many votes each man got."

The jury was specifically charged that, if no fraudulent tampering with these ballots was shown, the recount could not be considered at all. The statute providing for a recount, already quoted, clearly indicates

that in case of failure to show a tampering with the ballot boxes before a recount "the returns made by the said board of canvassers upon recount shall be deemed to be correct, anything in the previous return from such township, ward or district, to the contrary notwithstanding." While this portion of the charge would have been proper if it stated that the jury, if the facts warranted, notwithstanding the recount, had a right to find a ballot had been unlawfully tampered with before the recount, yet the sweeping statement it contained that the recount was of no force or effect, and not to be considered, overlooked the status given to the recount by the statute, and was erroneous.

The court further charged the jury:

"Are these ballots different now from what they were election night? Has some one changed them or tampered with them, or marked them in any way different from what they were marked that night, so as to change one or more votes for the office of sheriff? That is the question for you to decide in this case, and in deciding that question you have the right to consider the count that was made on election night and the degree of care that the inspectors used in counting the votes and in keeping the tally, and you have the right to consider the condition of the ballots now."

The portion of this paragraph that the jury could, in determining whether the ballot box had been tampered with, "consider the count that was made on election night and the degree of care that the inspectors used in counting the votes and in keeping the tally," is claimed by respondent to have been misleading and erroneous, for the reason that the return of the township inspectors had been superseded and set aside by the finding and return of the board of county canvassers made upon the recount.

The only complaint made by relator in his information to be considered in this case was that the ballot

box, after the count made by the inspectors and before the recount, had been opened, and ballots had been marked and changed. Members of the board of township inspectors of election were called as witnesses, and testified in this case relative to the canvass of the votes by this board after the polls were closed, and also as to marks on the ballots at that time. Other witnesses also testified to the same matters. These witnesses did not agree upon the facts. The jury was charged that they could consider the degree of care that the inspectors of election used on election night in counting the votes and keeping the tally. This was calling special attention of the jury to the acts of an official body, the conduct of which was not in issue in the case, and whose return had been superseded by the recount. It was also giving undue prominence to the testimony of these witnesses, which was certainly prejudicial to the respondent. The court was in error in so charging the jury.

The court further charged the jury:

"And you have heard the markings on these ballots described as they appeared on election night, and you have seen these ballots to show how they are now marked, and it is a question for you to determine in this case whether these ballots have been altered; whether any one or more of them have been altered since that election night so as to change the vote for sheriff. * * * Mr. Johnson claims, speaking of these marks on these ballots, that certain marks had been placed on those ballots since election night, that are called distinguishing marks, which destroy the validity of the ballot and put it in such a condition that it cannot be counted for any one."

Error is assigned upon the frequent statements of the court in the last two paragraphs of the charge above quoted that the jury might consider the markings on the ballots as they appeared at the time of the last trial, as follows:

"Are these ballots different *now* from what they were election night?"

Also:

"And you have the right to consider the condition of the ballots *now.*"

Also:

"And you have seen these ballots to show how they are *now* marked."

These quo warranto proceedings were begun under the statute for the purpose of determining whether this ballot box had been tampered with after the count by the inspectors of election and before the recount. It already appears that by stipulation this was the only issue to be considered in the case. The investigation, therefore, was limited to that brief time between November 6 and November 15, 1912. The record shows without dispute that from the time the recount was completed by the board of county canvassers when this ballot box was relocked and resealed by such board, the box and the key were delivered to James H. Whitney, township clerk of Sherman·township, and were kept by him continuously at his house for a period of about three months until the first trial of this case, when he delivered them to the clerk of the court. The record also shows from the cross-examination of this township clerk that during this time the ballot box and key were in his possession at his house there was ample opportunity to tamper with the same, and it appears from respondent's brief, which we do not find contradicted, that such claim was made upon the trial and argument in this case. These several statements of the court in his charge, above quoted, calling the attention of the jury to the ballots as they appeared at the time of the second trial, and saying to the jury, "You have the right to consider the condition of the ballots *now,*" was erroneous. The court should have

instructed the jury that only such changes in the ballots could be considered by them as were shown to have been made before the recount.

There remains to be considered only the error assigned by respondent upon the refusal of the court to grant a new trial. Many of the questions already passed upon in this opinion upon errors assigned during the trial were raised upon such motion. From what we have already said, it follows that the court was in error in denying the motion for a new trial.

For the reasons stated, the judgment of the circuit court is reversed, and a new trial is granted.

MOORE, J., concurred with MCALVAY, C. J.

STONE, J. We concur in the result because of errors in the admission of evidence as stated in the opinion.

BROOKE, KUHN, OSTRANDER, BIRD, and STEERE, JJ., concurred with STONE, J.