Belknap,  }
June 30, 1903. }

### STONE, *Adm'r,* *v.* BOSTON & MAINE RAILROAD.

In an action against a railroad company for negligently causing the death of a traveler at a grade crossing, testimony of the decedent's widow, that times had been hard in the town where she resided, is not so inconsistent with legal fairness of trial as to require that a verdict should be set aside, especially when the objectionable evidence was immediately excluded and the jury were instructed to disregard it.

In such action, evidence that the decedent had previously remarked upon the dangerous character of the crossing, and had taken precautions to avoid collision when passing over it, is admissible as bearing upon the question of his care at the time of his injury.

In such action, evidence that the warning prescribed by statute for the pro-
tection of travelers was not given, and that no whistle was sounded when
the decedent, in apparent ignorance of the danger of his situation, was
discovered by the trainmen at a distance of two rods from the crossing,
warrants a submission of the question of the defendants' negligence.

CASE, for negligently causing the death of the plaintiff's intes-
tate, Fred Stone, at the Winnisquam railroad crossing in Belmont,
on December 20, 1901. Trial by jury and verdict for the plain-
tiff. Transferred from the November term, 1902, of the superior
court by *Stone*, J.

The railroad curves toward the east as it approaches Winnis-
quam crossing from the north at a descending grade. From a
point about 200 feet north of the crossing to a point about 750
feet north of it, there is a bank on the easterly side of the track,
which varies in height above the rails from three and a quarter
feet at the former point to twenty-five feet at the latter. The
highway approaches the railroad from the east at a descending
grade. A person standing in the middle of the traveled part of
the highway, twenty-five feet east of the easterly rail, can see a
locomotive at a point 500 feet north of the crossing. From a
point in the highway twelve feet east of the easterly rail, a loco-
motive is visible when 579 feet north of the crossing. The acci-
dent occurred about an hour after sunset. The sky was some-
what cloudy. The ground was frozen. The train which struck
Stone was the south-bound Montreal express, known as No. 184,
and at the time of the accident was running a few minutes behind
its schedule.

The plaintiff's evidence tended to prove the following facts:
Stone was thirty-four years old, in good health, and possessed all
his faculties. For three weeks immediately preceding his death
he had been employed as a farm laborer by Martha Bowers of San-
bornton, for whom he had worked on a former occasion. He fre-
quently drove to Laconia, and on each trip passed over the Win-
nisquam crossing. At the time of the accident he was driving a
safe horse attached to a hay-rack containing an empty barrel and
a tin wash-boiler. As he drove upon the crossing from the east
he was struck by the locomotive, and received injuries which
caused his death. A witness for the plaintiff testified that he was
listening for the whistle, and that it was not sounded.

The defendants' evidence tended to prove the following facts:
A traveling engineer of the defendants, who occupied the fireman's
seat in the cab of the locomotive, first observed Stone when the
team was about two rods from the crossing, and the train was
about 300 feet from it. Stone was apparently looking straight

ahead, and did not turn or seem to pay any attention to the train. The horse was trotting at a rate of about five miles an hour. In response to the question whether Stone could have then stopped and avoided the collision, the witness replied that he did not know. It was admitted that no danger signal was given after Stone was first observed from the locomotive. The defendants' evidence also tended to prove that the crossing whistle was regularly sounded, that the headlight was burning, that the speed of the train was about forty miles an hour, and that all means were employed to stop the train after Stone was observed in dangerous proximity to the track.

The widow of the decedent was asked on direct examination if "there had been hard times in Laconia." An exception was claimed, but before it could be fully stated the witness answered in the affirmative. The court thereupon excluded the question and said to the jury: "It will make no difference to you whether the times are easy or otherwise."

Subject to the defendants' exception, the decedent's widow was permitted to testify that she rode over the Winnisquam crossing with her husband in the autumn of 1901; that he then drove slowly, listened, and said that the crossing was dangerous; and that he made the same remark at the same place at other times. Martha Bowers was permitted to give similar testimony in corroboration, subject to exception.

Subject to exception, on the ground that the witness was not qualified to give an opinion, George Plummer, who was a passenger on the day of the accident and had traveled by the same train five or six times in three years, testified that the speed of the train "might have been sixty miles an hour."

Subject to exception, a watch alleged to have been carried by the decedent at the time of the accident was produced and shown to the jury, for the purpose of showing the time at which it stopped.

Three witnesses who were passengers on the train, and who were not listening, testified that they did not hear a crossing whistle, subject to exception.

Subject to the defendants' exception, Daniels, a witness called by the plaintiff, testified that many times before and since the death of Stone he had timed the speed of train No. 184 between stations a few miles south of Winnisquam crossing, and that a distance of three miles was frequently covered in three and a quarter or three and a third minutes. One witness testified, subject to exception, that a few days before the trial he made observations as to the speed of train No. 184, and computed it to be fifty and a half miles an hour. Another witness testified, subject to exception,

that a few days before the trial he made observations of the reflections from the headlight of a train supposed to be No. 184, and that the light was not thrown upon the highway at a point thirty feet distant from the crossing, nor upon any objects visible from that point.

The defendants seasonably moved for a nonsuit and that a verdict be directed in their favor. Both motions were denied, and they excepted.

*Shannon & Young* and *Beckford & Hibbard*, for the plaintiff.

*Jewett & Plummer* and *Streeter & Hollis*, for the defendants.

REMICK, J.   1. The question and answer regarding the condition of the "times" in Laconia were not "so inconsistent with legal fairness of trial as to make it a matter of law that there should be a new trial," especially in view of the immediate action of the court excluding the evidence and instructing the jury not to heed it.   *Aldrich* v. *Railroad*, 67 N. H. 380, 382; *Gilman* v. *Laconia*, 71 N. H. 212.

2. Bearing upon the probability whether the decedent exercised care at the crossing upon the occasion in question, it was competent to show by the decedent's widow and Martha Bowers that in passing over the crossing upon previous occasions he had remarked upon its dangerous character and taken precautions against collision.   *Evans* v. *Railroad*, 66 N. H. 194; *Lyman* v. *Railroad*, 66 N. H. 200, 203, 204.

3. The objections to the testimony of George Plummer, go entirely to its weight and credibility, and present no question of law.

4. Upon the questions of darkness and whether the train was running on schedule time, the watch which was in the decedent's pocket when the collision occurred, and which was stopped, had some probative value, and was competent, in connection with the other testimony, upon those points.

5. The testimony of passengers who were not observing, that they did not hear the whistle, was open to no legal objection.

6. The observations of Daniels and others as to the speed of the train in question at other times and points presents no question of law, and the same is true of the testimony regarding the reflection of the locomotive headlight.   *Parkinson* v. *Railroad*, 61 N. H. 416; *Proctor* v. *Freezer Co.*, 70 N. H. 3; *Whitcher* v. *Railroad*, 70 N. H. 242, 248.

7. The motions for nonsuit and verdict were properly denied. There was evidence that the defendants did not give the eighty-

rod whistle required by statute for the protection of travelers at railroad crossings, and it was admitted that no warning whistle was given by the defendants when they discovered the decedent about two rods from the crossing, approaching the crossing and apparently paying no attention to the approach of the train. Upon the case presented by the record, we think reasonable men might find that the decedent's injury was caused by the defendants' negligence.

But it is urged that the decedent was guilty of contributory negligence. In view of the evidence of the decedent's frequent recognition of the dangerous character of the crossing and of his previous care in passing over it,—that on the occasion in question he was traveling in a hay-rack containing an empty barrel and tin wash-boiler, over frozen ground, upon a night more or less dark,— that the statutory whistle was not given,—that the schedule time for the crossing of the train had passed,—that the track was obscured by the lay of the land in the vicinity of the crossing so that the decedent could not see the train 300 feet away until he was within about two rods of the crossing,—that his horse, attached to the rigging mentioned, was trotting at the rate of about five miles an hour when the two-rod point was reached,—we think it cannot be said as matter of law that the decedent was guilty of contributory negligence, upon the mere evidence of the traveling engineer (the weight and credibility of which might be materially affected in the minds of the jury by the other evidence and circumstances bearing upon its probability), that he saw the decedent about two rods from the crossing, when the train was about 300 feet away, looking straight ahead and apparently paying no attention to the approaching train, especially in view of the statement of the witness that he did not know whether the decedent would then have had time to stop and avoid the injury. The case is distinguishable from *Waldron* v. *Railroad*, 71 N. H. 362, and is more like *Smith* v. *Railroad*, 70 N. H. 53, *Davis* v. *Railroad*, 68 N. H. 247, 248, *Folsom* v. *Railroad*, 68 N. H. 454, *Evans* v. *Railroad*, 66 N. H. 194, *Lyman* v. *Railroad*, 66 N. H. 200, and *State* v. *Railroad*, 52 N. H. 528.

*Exceptions overruled.*

All concurred.