CHARLES O. GRAY, Administrator of the Estate of F. M. GRAY, Deceased, Appellee, v. THE CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, Appellant.

Railroads: CROSSING ACCIDENT: DEMONSTRATIVE EVIDENCE. Where witnesses have testified to observations made or objects seen from a given point, it is competent for others who have made the test from the same viewpoint to testify that objects alleged to have been seen therefrom, were not in fact visible; as where a witness had stated, that from a certain position in her house, she observed deceased through different windows as he passed along the highway toward the railway crossing, it was competent for an engineer, who had taken measurements and made observations from the same position, to testify that deceased could not have been seen through one of the windows after he was within a certain distance of the crossing.

Same: NEGLIGENCE: EVIDENCE. Where the petition in an action for the death of one killed at a railway crossing alleged negligence of the company in failing to erect a whistling post, which was unchallenged either by motion or demurrer, evidence that there was no whistling post was admissible in support of the issue.

Same: CONTRIBUTORY NEGLIGENCE: EVIDENCE. There may be circumstances in which the general habit or practice of one killed on a railway crossing may be inquired into, for the purpose of explaining his presence at the time and place of the collision; and possibly as having some bearing on the question of contributory negligence; but specific instances indicating care or recklessness, not only with respect to the crossing at which the accident occurred, but other crossings as well, and specific instances in the experience of other persons at other times and under other circumstances, are not admissible, because tendering collateral issues.

Railroads: CROSSING ACCIDENT: SPEED: NEGLIGENCE: EVIDENCE. While as a general rule, high rate of speed by a railway train in the open country, is not in itself negligence, but on approaching street and highway intersections, due care for the rights of those who may be rightfully upon the crossing must be exercised, and where the situation of a crossing and its surroundings are such, as to obscure the view and render the ordinary signal less noticeable and effective, excessive speed may constitute negligence. In the

instant case, the evidence is held to support a finding that the speed at which the train was operated at the crossing in question, constituted negligence.

**Same:** CONTRIBUTORY NEGLIGENCE: PRESUMPTION AS TO CARE: FACT QUESTION. In the absence of direct evidence as to what deceased did or failed to do, by way of precaution, as he approached the railway crossing where he was struck by defendant's train and killed, the presumption that he, prompted by natural instinct, was in the exercise of care for his own safety obtains; and this presumption is one of fact, and the question of whether it is overcome by the other circumstances shown in the evidence, is for the jury to determine. The existence of evidence as to facts shortly before or shortly after the accident, does not interfere with the application of the rule.

**Instructions:** REFUSAL. The refusal of instructions which are argumentative, or the substance of which is embodied in the charge given, is proper.

**Railroads:** CROSSINGS: DUTY OF TRAINMEN. It is the duty of trainmen to exercise reasonable vigilance to know that a public crossing is clear, when approaching the same, and the degree of vigilance demanded must be proportionate to the dangers surrounding the particular crossing.

**Presumption as to care:** INSTRUCTION: HARMLESS ERROR. Where there was no direct evidence showing the care exercised by decedent on approaching a railway crossing, an instruction as to the presumption of care, using the words "in the absence of living witnesses" rather than "in the absence of direct evidence" is held not prejudicial.

**Affirmative and negative evidence:** INSTRUCTION. It is the province of the jury to determine the relative value of affirmative and negative evidence, as where certain witnesses stated that they heard crossing signals and others that they did not hear such signals, and an instruction that the two classes of evidence are of equal weight is erroneous.

*Appeal from Cedar District Court.*—HON. W. N. TRIECHLER, Judge.

THURSDAY, JULY 1, 1909.

ACTION at law for damages. Verdict and judgment for plaintiff, and defendant appeals.—*Reversed.*

*Carroll Wright, J. L. Parrish* and *Wright, Leech &
Wright,* for appellant.

*I. J. Hamiel, George W. Ball* and *Carl Mathers,* for
appellee.

WEAVER, J.—Plaintiff's intestate, F. M. Gray, was
killed by a passing train upon a highway crossing of the
defendant's railway. This action. is brought to recover
the resulting damages to his estate on the theory that de-
fendant was negligent in failing to give the proper cross-
ing signals, in the rate of speed at which the train was
moving, in failing to use ordinary care to see the deceased
or to know of his approach to the track, and in neglect-
ing to place a whistling post or other suitable sign to in-
dicate to the engineman the proper place for giving the
crossing signals. The answer denied generally all the alle-
gations of the petition. At the point where the accident
occurred, the course of the railroad extends from the
southeast for some distance in a northwesterly direction.
The highway from the north and the railway from the
northwest approach each other at a somewhat acute angle.
A short distance before reaching a point where these lines
would intersect, the highway deflects to the southwest and
crosses the railway very nearly at a right angle. To a
traveler moving from the north and approaching the cross-
ing the view of the railroad was obstructed by cuts, build-
ings and trees; but the extent and completeness of such
obstruction are subjects of dispute in testimony. On the
morning of April 26, 1907, the deceased, driving along
this route alone in an ordinary single top buggy, was struck
upon the crossing by a train from the northwest. This
brief outline is probably sufficient to afford an idea of
the general situation and enable the reader to understand
the bearing of the testimony to which we shall hereinafter
refer.

I.   The witness who last saw the deceased before the instant of collision appears to have been a Mrs. Duple residing in the neighborhood.   Her home is located four hundred and forty feet northeast of the railway crossing and two hundred and twenty-five feet east of the highway down which deceased was driving.   From the place where Mrs. Duple was sitting in her kitchen in the northeast part of the house, a window on the north afforded a view of a short section of the highway some six hundred feet or more from the crossing.   Looking straight west from the same position through a smaller window, she could see another but smaller section of the highway, while, turning her eyes still further to the left or southwest, and looking across another room opening from the kitchen and through a window on the opposite side of said room, a third section of the highway not far from the crossing came into view.   According to her story she was seated at her work near the north kitchen window on the morning in question and noticed deceased as he came into her range of vision through each of the openings to which we have referred.   She further testifies that at the first and second points of her observation deceased was driving slowly; but when she last saw him his team was moving at a trot.   She did not see him enter upon the crossing, and did not witness the collision.   As the pertinence and weight of this testimony, so far as it bears upon the question of contributory negligence, depend very largely upon the distance between the deceased where he was last seen and the crossing where he was struck, plaintiff took the evidence of an engineer who had made a survey of the surroundings and had tested the range of vision commanded by the several windows of the Duple residence from the point where Mrs. Duple says she was sitting at the time in question.   According to this witness, to an observer so located a traveler on the highway from the north would

*1. RAILROADS: crossing accident; demonstrative evidence.*

come into view at a point seven hundred and eighty feet from the crossing; at six hundred and twenty feet he would pass out of sight; at four hundred and ten feet he would reappear in front of the small window on the west; at three hundred and forty-five feet would again disappear; at one hundred and ten feet he would come in range through the window in the front room, and at fifty-five feet from the crossing would pass finally from sight. Error is assigned upon the admission of much of this testimony. The point made may be illustrated by the following extract from the record. Counsel for plaintiff asked the witness: "State whether or not a person sitting in the chair in the kitchen at the point pointed out to you by Mrs. Duple could see a person traveling along the highway from the point mentioned by you fifty-five feet east of the crossing and at the place where he had reached the crossing." The question was objected to as incompetent, immaterial, leading, suggestive and invading the province of the jury. The objection being overruled, the witness answered: "A person could not be seen in that fifty-five feet from that point in the building." While the answer partakes of a conclusion, it is also a statement of fact determined or ascertained by mathematical and visual demonstration. It is one of the commonest occurrences, upon the trial of cases where witnesses have testified to observations made or objects seen from a given point, for the opposing party to call witnesses who claim to have made the test from the same point and have them testify that the things alleged to have been seen therefrom are not in fact visible. The witness in this instance stated the facts as he claims to have found them by personal observation and by measurements which he described in detail, and his statement that within certain limits a person could not be seen by an observer from a given location is clearly admissible under the recognized rule of our own cases. Quite in point, see: *State v. Kidd,* 89 Iowa, 54; *Brown*

*v. Railroad Co.,* 94 Iowa, 309; *Trott v. Railroad Co.,* 115 Iowa, 80; *Rietveld v. Railroad Co.,* 129 Iowa, 254. Other objections to the testimony of the engineer fall within the same general rule, and we need not further discuss them.

II. A witness was permitted to testify that he found no whistling post for this crossing along the defendant's road. Appellant takes the position that it was under no

2. SAME: negligence: evidence.

obligation to maintain such a post, and failure in that respect could not be negligence. An instruction to this effect was asked and refused, though the court appears to have ignored the issue in giving the charge to the jury. We are not prepared to say that as a matter of law failure to erect and maintain a whistling post or other mark or sign to warn the trainmen of the proximity of a crossing can in no case be held a negligent omission. The fact was charged in the petition as negligence, the allegation was not challenged by motion or demurrer, and, the evidence offered having direct bearing upon the issues as joined, there was no error in its admission. We are of the opinion, however, that if the trial court concluded that, in view of the whole case, this issue ought not to be submitted to the jury, it should have expressly withdrawn it with the evidence offered in its support. We might not be disposed to reverse on this ground alone; but, a reversal being found necessary on other grounds, we mention it that the objection may be avoided on a retrial.

III. Over the objection of the defendant, plaintiff was permitted to show by several witnesses not only the general habit of the deceased with reference to his manner

3. SAME: contributory negligence: evidence.

of making this crossing and particular incidents illustrating such habit, but was allowed to introduce testimony of particular instances of his approaching other railway crossings and of the precautions taken by him to guard against a collision. Other witnesses were also allowed to state their

own personal experience in using this crossing when deceased was not present. We think the plaintiff was permitted to go far beyond the allowable limit in these respects. We can conceive circumstances under which, in the absence of more direct testimony, the general habit or practice of a person killed at a crossing may be inquired into as far as such habits may fairly tend to explain his presence at the time and place of collision, and perhaps as having some indirect bearing upon the question of contributory negligence. *Railroad Co. v. McNeil,* Ind. App., 66 N. E. 777; *Railroad Co. v. Clark,* 108 Ill. 113; *Stone v. Railroad Co.,* 72 N. H. 206 (55 Atl. 359); *Evans v. Railroad Co.,* 66 N. H. 194 (21 Atl. 105); *Railroad Co. v. Bailey,* 145 Ill. 159 (33 N. E. 1089). But to go into the realm of specific instances indicating care, on the one hand, or recklessness, on the other, with reference not only to this crossing, but to other crossings, and specific instances in the experience of other persons at other times and under other circumstances, is to introduce confusion into the trial and distract the attention of the court and jury to collateral issues. This question was before the court in *Dalton v. Railroad Co.,* 114 Iowa, 259, where the railway company, in order to show contributory negligence on the part of the deceased who was killed in driving over a crossing in the nighttime, offered evidence that on occasions he had been seen to be asleep in his buggy. We there said: "This evidence was admitted on the theory, we suppose, that it would tend to show he was asleep at the time he was struck by the train, or perhaps to show his habit in this respect. Such evidence was clearly inadmissible. Rarely, if ever, may previous isolated instances be shown, to prove a condition existing at the particular time in question. Evidence of this kind tenders collateral issues that the other party is not prepared or expected to meet, and is directed to points not directly in issue. Moreover, the circumstances surround-

ing the instances may not have been the same as those surrounding the main fact in dispute. We are not to be understood as holding that the habits of one whose conduct is in question may not be shown in certain cases; but such habits are not to be proven by the evidence, that he previously did the same thing." The principle here applied is so well settled that we need not burden the discussion by further citation. The error here pointed out is both manifest and material. The testimony of the witnesses mentioned as to the physical facts which characterize this crossing and its immediate vicinity was, of course, competent and material, and to that extent there was no error in its admission.

IV. Error is assigned upon the refusal of the trial court to direct a verdict for the defendant. The motion was based upon the alleged insufficiency of the evidence to show negligence in the defendant or want of contributory negligence in the plaintiff's intestate. The first ground is not pressed upon our attention with much confidence, and in our judgment it can not be sustained. The crossing is concededly a peculiarly dangerous one for persons traveling the highway from the north. For a considerable distance one approaching it from that direction obtains no view of the railway except at a few openings where small sections of the track are disclosed, and not until he reaches within a few feet of the north rail is he able to get a clear view of an approaching southbound train. While the general rule that no rate of speed by a railway train in the open country is negligence *per se,* it is no less true that a railway company running its trains across streets and highways must operate them with due regard to the rights and the safety of the public at points where these avenues of travel and commerce intersect. See *Kinyon v. Railroad Co.,* 118 Iowa, 358, and cases there cited. This duty is emphasized where the crossing is made in surroundings

4. RAILROADS: crossing accident: speed: negligence: evidence.

which obscure the view or are of such character as to render the ordinary signals less noticeable or less effective. The evidence as to the signals given in the instant case is contradictory. The preponderance of numbers among the witnesses is to the effect that the whistle was sounded a thousand feet or more from the crossing, and that the bell was rung continuously. Others who were favorably situated say that they did not hear the signals, and there is some testimony that the only whistle sounded was when the engine was only about three hundred feet from the crossing. The rate of the train's speed was evidently very high. The fireman whose situation was on the north side of the engine was engaged in "cleaning the deck" and was keeping no lookout. These, to say nothing of other circumstances, are sufficient to uphold a finding that the company was chargeable with negligence.

So far as the case made by the evidence is concerned, appellant lays principal stress on the proposition that deceased was guilty of negligence contributing to his own

5. SAME: contributory negligence: presumption as to care: fact question.

death. This conclusion is drawn from the circumstances testified to by Mrs. Duple and from the fact that deceased was well acquainted with the crossing and its peculiarly dangerous character, and that common prudence required him to satisfy himself that the track was clear before entering the zone of danger. The court has no inclination to abrogate the rule upon which counsel strenuously insists that a railway crossing is a known place of danger, and that the sight of the iron rails across his path is a proclamation of warning to which no prudent man will fail to give heed. Nevertheless the traveler may rightfully use the highway even across a railway track. His right thereto is upheld by a guaranty no less ancient or sacred than that which assures to the railway company the right to move its trains over its own road, though as driver of the less ponderous vehicle he must yield preference to

those trains in the use of the crossing. But having the right to use it save only when the danger of collision is so apparent that a reasonably prudent person would not take the risk, or when the circumstances are such that as a reasonably prudent person he should investigate and satisfy himself that the way is clear and fails to exercise that precaution, it becomes in the very nature of things a question of fact whether what he does or fails to do is consistent with exercise of reasonable care on his part. This is always a jury question, save in those exceptional cases where the facts are so clear and undisputed that all reasonable minds must reach a like conclusion thereon. We find no such situation here.

The fact that deceased was driving his horses at a trot when last seen by Mrs. Duple has little or no tendency to show that he continued to drive at that rate until he collided with the train. Counsel seem to draw the conclusion that, according to this witness, deceased was in her sight until he reached about twenty-one or twenty-three feet from the track; but this is incorrect. She claims to have seen him until just as he passed a line between her and a certain pole on the right of way near the track. That pole, according to the witnesses, stood west of the highway and twenty-one feet from the north rail; but, measuring from the pole to the plank crossing where deceased was struck, it was about thirty-eight feet. Moreover, the line of observation from the position occupied by the witness to the pole was not parallel with the course of the track, but diverged therefrom over four hundred feet, and it may well be that the deceased would pass her line of sight in the direction of the pole substantially at the distance from the crossing which is testified to by the engineer, or fifty-five feet. In this distance there was ample time for him to have brought his horses to a walk, or to have stopped them, or to have looked and listened for approaching trains. We can not presume that he did not use the rea-

sonable precautions of a normal reasonable human being, inspired by a natural love of life, and moved by the instinctive care which leads all higher orders of animal existence to avoid physical harm. Indeed, as is now well settled, there is a presumption to the contrary in the absence of direct evidence from which the jury may ascertain the truth as to the nature and extent of the care exercised by the injured person. *Phinney v. Railroad Co.,* 122 Iowa, 492; *Dalton v. Railroad Co.,* 104 Iowa, 26; *Hopkinson v. Knapp,* 92 Iowa, 328; *Brown v. Coal Co.,* (Iowa), 120 N. W., 732. And see *Lunde v. Cudahy,* 139 Iowa, 688, and cases there cited.

The defendant's fireman did not see the deceased at all until after the accident. The engineer did not see him, but caught a glimpse of the team and buggy just at the instant of collision. From the time he left the view of Mrs. Duple no witness claims to have seen the intestate until his body was found in the ruins of the carriage, nor is there the slightest direct evidence of what he did or failed to do by way of precaution as he approached the crossing. Under similar circumstances, in the *Dalton* case, *supra,* we said: "It can not be questioned that, in going upon the crossing when he did, ordinary care required that deceased should have stopped, looked and listened to know if a train was approaching. It is a recognized rule of human conduct that persons in their sober senses naturally and instinctively seek to avoid danger. Therefore it must be presumed, until the contrary appears, that the deceased, prompted by this natural instinct, did exercise care in approaching and going on that crossing. . . . Whether the circumstances are such as to overcome the presumption that deceased, prompted by the instinct of self-preservation, did exercise the care required by him, was a question for the jury." See, to the same effect: *Hendrickson v. Railroad Co.,* 49 Minn. 245 (51 N. W. 1044, 16 L. R. A. 261, 32 Am. St. Rep. 540); *Mynning v. Railroad Co.,* 64 Mich. 93 (31 N. W. 147, 8 Am. St.

Rep. 804); *McBride v. Railroad Co.,* 19 Or. 64 (23 Pac. 814).

The *Hendrickson* case is not unlike the one at bar in material respects. The deceased was seen to drive in the direction of the crossing and enter upon the right of way, was seen again by the engineer just the instant before the collision; but there was an entire absence of proof whether he stopped, looked and listened. The court there said: "A plaintiff administrator is not required in all cases of this character to prove affirmatively that his intestate looked or listened. It may be inferred, in view of the circumstances, that the deceased, governed by the instinct of self-preservation, did what a prudent man would ordinarily do to save his life." See, also, *Railroad Co. v. Weber,* 76 Pa. 157 (18 Am. Rep. 407) and *Schum v. Railroad Co.,* 107 Pa. 12 (52 Am. Rep. 468). If the presumption to which we have referred is ever to obtain, it would be difficult to frame a more typical case calling for its indulgence than is here presented. The fact that there are living witnesses who can testify to facts, shortly before or shortly after the accident does not interfere with the application of the rule. In *Phinney v. Railroad Co.,* 122 Iowa, 492, a surviving witness was standing by the deceased when he fell from the car, and in *Lunde v. Cudahy,* 139 Iowa, 688, another person was in the same room when deceased fell into the wheel pit; but as neither saw what care, if any, the deceased exercised for his own safety, it was held in each instance that the administrator was entitled to the benefit of the presumption. The presumption is, of course, one of fact, and it becomes, as we have seen, a question for the jury whether the presumption is overcome by other facts and circumstances appearing in evidence. There was no error in refusing to direct a verdict.

V.   Of the instructions refused our attention is called particularly to those numbered two, five, eleven and twelve. The second request was argumentative only and properly

refused. The substance of the fifth request was embodied
in the charge given by the court, and there
was no error in its refusal. The eleventh
and twelfth requests were, in effect, to withdraw from the
jury the allegations of negligence in the defendant's en-
ginemen in operating the train and in failing to keep a
proper lookout for the crossing. They were properly over-
ruled.

6. INSTRUCTIONS: refusal.

Reasonable vigilance to know that a public crossing is
clear is a duty resting upon those operating railway trains,
and that vigilance must bear some reasonable proportion
to the known peculiarly dangerous character
of the particular crossing which they are
approaching. In this case, as we have seen,
the fireman was not on guard at his window, and the
engineer was in a position from which no effective view
of the crossing could be had. In this manner they swept
over the crossing at a very high rate of speed. While such
facts do not present a case of negligence *per se,* they do pre-
sent a situation from which a jury may fairly find actual
negligence.

7. RAILROADS: crossings: duty of trainmen.

VI. Of the paragraphs of the charge on which errors
are assigned, we may say that the seventh appears to be
confused in statement, and makes the application of the
presumption of care by the deceased depend
on the absence of living witnesses, when,
perhaps, the more exact statement would
be "the absence of direct evidence"; but we think it is not
prejudicially erroneous.

8. PRESUMPTION AS TO CARE: instruction: harmless error.

The tenth paragraph is in the following form: "(10)
If from the evidence in this case you find that some wit-
nesses testified that they heard the whistle sound and the
bell ring before reaching the crossing at
which the injury occurred, and other wit-
nesses having the same opportunity to hear
such whistle sounded and the bell rung testified that they

9. AFFIRMATIVE AND NEGATIVE EVIDENCE: instruction.

listened and did not hear the whistle sounded, or did not hear the bell ring, or did not hear either of them, then you are instructed that such testimony of the latter witnesses is not negative, but positive, and entitled to equal weight with the affirmative statements of the former witnesses, and that such statements create a conflict of evidence, which it is the province of the jury to determine." Insofar as this paragraph instructs the jury that the testimony of the two classes of witnesses is of equal weight, it can not be approved, because it invades the province of the jury, which alone is charged with the duty of passing upon the weight and value of the evidence offered on trial. What the court doubtless had in mind was the proposition that there is no more inherent strength or weakness in the one kind of evidence than in the other, so long as the witnesses are in possession of their faculties and have equal opportunity to see, hear and know the truth with reference to the matter under inquiry; and, thus interpreted, the instruction would afford no good ground for reversal. As stated, however, it has a tendency to convey an incorrect idea, and impress the jury with the thought that the weight of this item of evidence is fixed or determined as a matter of law. The weight and value of such testimony, affirmative and negative, is to be determined by the jury, as in all other cases, from a consideration of the apparent credibility of the witnesses, the reasonableness of their statements, and all the other relevant facts and circumstances from which the candid mind may reach an intelligent conclusion as to the truth of the matter in dispute. This rule was violated by the instruction to which we have referred, and the appellant's exception thereto must be sustained. Some of the other instructions criticised are, perhaps, less clear and exact than they might be; but we find none involving prejudicial error.

Errors assigned but not referred to in this opinion relate to questions which are controlled by the conclusions

hereinbefore announced and require no further considera-
tion. For the reasons stated, a new trial must be awarded.
The judgment of the trial court is *reversed.*